No. 14,263.

MICHELL *v.* SAN JUAN MINING COMPANY.

(83 P. [2d] 149)

Decided June 20, 1938.   Rehearing denied July 26, 1938.

Mr. BENTLEY M. McMULLIN, Messrs. McCLOSKEY & BEISE, for plaintiff in error.

Mr. WILLIAM A. WAY, Mr. WILLIAM H. SCOFIELD, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE district court judgment now under review is one

of dismissal entered when the plaintiff Michell elected to stand on his amended complaint after the latter had been assailed by a motion which was, by agreement of court and counsel, treated as a general demurrer and was sustained.

In somewhat abbreviated form the allegations in the amended complaint are as follows:

First Cause of Action:

The defendant San Juan Mining Company is a Colorado corporation;

The United Operating Trust, Inc. (hereafter referred to as the Trust) is also a Colorado corporation, incorporated February 1, 1927; thereafter, during 1927, certain real property in San Juan county, Colorado—consisting of six patented lode mining claims, seven unpatented lode mining claims, two mill sites, one tunnel site, two water rights, and six lots in the town of Silverton—was conveyed, together with all buildings and improvements, to the Trust, and the Trust thus became and remained the owner of said real property and of certain ore, mining machinery, tools and equipment used in connection therewith, in fee simple absolute, free and clear of all liens and encumbrances, except as hereafter set forth;

Between January 12, 1932, and January 25, 1932, inclusive, four men named Saletto, Curtis, Berkey and Richards commenced separate actions in the county court of San Juan county against the Trust, to recover various sums of money aggregating nearly $4,500; attachment writs were duly issued in each case and levied upon all the above described property except the six Silverton town lots, the two mill sites, and the tunnel site;

The actions were consolidated, and on March 8, 1932, a consolidated judgment was entered in the aggregate sum of $4,475.48 and costs, awarding a final judgment to each plaintiff for the sum he respectively demanded, and sustaining the attachments and ordering issuance of the usual special execution; on June 2, 1932, writs of special execution were accordingly issued, the property thereto-

.fore levied upon was on June 28 offered for sale by the sheriff thereunder, and sold; the personal property was sold to one May for $800, and the real property to Curtis, one of the attaching plaintiffs, as trustee representing all these plaintiffs, for $4,018.36, and a certificate of purchase was issued to him on said date, no money consideration being paid for any part of the property but the amounts so bid being paid by satisfying the consolidated judgment in full;

On November 1, 1932, said Curtis assigned the certificate to one Davis;

The defendant San Juan Mining Company was incorporated February 23, 1933, and five days later said Davis assigned the certificate to this company, pursuant to a written contract, hereafter quoted, a copy being attached to the amended complaint;

The assignments were not recorded and the plaintiff Michell had no knowledge or notice thereof until April 10, 1933, prior to the recording of the sheriff's certificate of purchase;

On March 7, 1933, the plaintiff commenced in the San Juan county district court an action against the Trust, to recover a money judgment for $13,044.25, interest and costs, and on April 10, 1933, obtained judgment for $14,-769.43 and costs;

On said April 10, 1933, the sheriff executed and delivered to the defendant San Juan Mining Company a sheriff's deed, conveying to it all the property levied upon under the aforesaid writs of attachment;

On April 17, 1933, a writ of execution was issued on the plaintiff Michell's judgment and was levied on the six town lots, the two mill sites, and the tunnel site, that is, on all the property of the Trust not levied upon under the aforesaid attachments and worth not to exceed $100; the execution was returned wholly unsatisfied and thereunder the plaintiff recovered nothing;

A transcript of the plaintiff's judgment was filed for record on April 20, 1933;

The Trust is and ever since April 10, 1933, has been defunct, inoperative and insolvent, and the owner of no property whatever;

The plaintiff is a stockholder and director of the Trust, and a judgment creditor as aforesaid, and the Trust has failed and refused to set aside the aforesaid conveyance, as demanded by plaintiff;

The sheriff's deed to the defendant San Juan Mining Company was invalid for certain specified statutory and constitutional reasons [which, however, are "not involved in this appeal," as the plaintiff in error's abstract of the record expressly admits] .

Second Cause of Action:

All the foregoing allegations are incorporated by reference;

The attachment sale and resultant sheriff's deed sold and conveyed all the property of the Trust, real and personal;

By a sworn statement of the Trust on February 26, 1932, its personal property was valued at $6,355.59 and its real property at $724,844.73;

By a sworn statement of the defendant San Juan Mining Company as of December 31, 1934, said personal property was valued at $6,000 and the mining claims at $300,000;

The real and personal property was at the time of the sheriff's sale and at all times since and now is worth many times the amount bid therefor at said sale;

May, the purchaser at said sheriff's sale of the personal property of the Trust, was then and had long been a stockholder and director of the Trust, and an active and interested party in the management of its affairs, and he then stood in a position of trust and confidence with relation to the Trust, and purchased the property for the use and benefit of the Trust, and set it over, transferred and assigned it to the defendant San Juan Mining Company pursuant to the plan and agreements hereafter set forth;

Davis, the aforesaid assignee of the certificate of purchase was, from January 1, 1932, to April 10, 1933, inclusive, a stockholder and officer of and financially interested in the Trust, and during said period actively engaged in mining and operating the properties of the Trust at Silverton, and occupied a position of trust and confidence in the Trust, and was under the duty to preserve and protect its properties and interests for the Trust's stockholders, and upon incorporation of the defendant San Juan Mining Company said Davis became the manager and director thereof and remained such during its first year;

After said sale of June 28, 1932, certain officers and stockholders and persons financially interested in the Trust, namely, one DeVries, one Steelsmith and the aforesaid Davis and other persons whose names are unknown to the plaintiff, but who were designated by the common name of the "Iowa Stockholders," formed a plan to take over and acquire said properties under said sheriff's sale free from the claims of all other stockholders and creditors except as hereafter set forth and to organize among the western stockholders of the Trust a new corporation to conduct the operation of said properties, and from and by the aid of said Iowa Stockholders the sum of $4,018.36 was raised, and said Davis purchased said sheriff's certificate of purchase with said sum of money pursuant to said plan;

Pursuant to said plan and on December 23, 1932, being a date before expiration of the time within which the Trust was authorized by law to make redemption of its real property from said sheriff's sale, said Davis, acting as trustee for and on behalf of the corporation proposed to be organized pursuant to the plan, entered into a written contract with the Trust by which it was agreed that said corporation should be organized and that all rights held by Davis in said certificate should be held by him for the use and benefit of said corporation and should be transferred to it upon its organization; that the Trust

would and did waive all its rights to redeem the property and would execute all necessary quitclaim deeds conveying the property to the new corporation; and in consideration thereof Davis as trustee for the corporation agreed that the corporation so formed would pay to the Trust ten per cent of the net earnings of said corporation until $225,000 had been paid, and five per cent thereafter so long as the mines could be profitably operated;

Pursuant to said plan and agreement, and subject to the same, which was ratified and adopted by said corporation, the certificate of purchase was as aforesaid assigned by Davis, and pursuant thereto as aforesaid the sheriff's deed was made and constituted in effect a voluntary conveyance of the Trust's properties to the defendant San Juan Mining Company upon the terms and for the purposes set forth in said agreement;

The Trust was indebted in a large amount at all times from and after July 1, 1928; said indebtedness increased from month to month, and after December 31, 1931, equaled or exceeded $8,544.21, and on December 12, 1932, $13,044.25 became due as aforesaid;

All said transactions, excepting only said attachment suits and sale and said sheriff's deed, were cloaked with secrecy, and the facts and circumstances regarding the same were at no time disclosed or given to the stockholders or creditors of the Trust or to the plaintiff Michell;

The defendant San Juan Mining Company had both actual and constructive notice of the aforesaid facts; actual notice was acquired by said corporation through said Davis, Steelsmith and DeVries, who comprised its first board of directors, and through William A. Way, who was its attorney and agent for service of process, all of whom were at all times familiar with said proceedings, transactions and conveyances and the facts surrounding the same; said San Juan Mining Company acquired constructive notice of the facts above set forth by reason of the allegations of the complaint in said

action brought by plaintiff Michell, which complaint alleged and set out that said Trust had fraudulently conveyed or was about to fraudulently convey the property to said company in fraud of the rights of creditors and stockholders of the Trust; a lis pendens was filed in the office of the county clerk and recorded on March 17, 1933, prior to the execution of said sheriff's deed;

By reason of the aforesaid facts said sheriff's deed of April 10, 1933, was and is void and of no force or effect as against the plaintiff Michell; said deed constituted a conveyance and transfer of real property in trust for the use of the person making the same, namely, the Trust, and said deed was a conveyance made with the intent to hinder, delay and defraud the creditors and stockholders of the Trust of their lawful suits, damages, forfeitures, debt and demands, all contrary to sections 5100 and 5116 of the Compiled Laws of 1921.

The plaintiff Michell prayed that a receiver be appointed for the real property, that the defendant be enjoined from transferring, encumbering, leasing or otherwise disposing of the property during pendency of the action, that the sheriff's deed be set aside, that plaintiff's judgment against the Trust be decreed to be a first and prior lien on all said real property, that the property be sold under execution in satisfaction of the judgment, that he have judgment for his costs, and that he have such other and further relief as to this court shall seem proper.

The contract referred to in the complaint was as follows:

"This agreement, made and entered into this 23rd day of December, 1932, by and between Noah W. Davis, Trustee for and on behalf of the proposed corporation to be organized under the Laws of the State of Colorado, party of the first part, and

"United Operating Trust, Incorporated, a corporation organized and existing under the Laws of the State of

Colorado, with principal offices in Silverton, Colorado, party of the second part,

"Witnesseth,—

"Whereas, the said Noah W. Davis personally has purchased for Four Thousand and Eighteen and 36/100 Dollars ($4,018.36) a Certificate of Sale of certain mining and other properties belonging to the party of the second part, on a judgment obtained against the second party in San Juan County, Colorado, and

"Whereas, the first party acting for himself and for the purposes set forth in this agreement, proposes to organize a corporation under the laws of the State of Colorado for the purpose of equipping and operating the mining properties owned by second party known by the name of the Maybelle Mine.

"Now therefore, in consideration of the covenants hereinafter agreed to by the parties hereto, it is agreed as follows, to-wit:

"1. The party of the first part agrees to forthwith and immediately upon the execution of this agreement proceed to organize a corporation under the laws of the State of Colorado to be known as ....................
having an authorized capital stock of..........shares.

"2. Noah W. Davis agrees that he will act as Trustee for the proposed corporation to be organized, and that he will hold the rights secured under the judgment and sale hereinbefore recited for the use and benefit of the proposed corporation, and that immediately upon the organization of the proposed corporation he will turn over to the said corporation all the rights secured by him under the aforesaid judgment.

"3. The party of the second part agrees that it will refrain from redeeming the property belonging to it, and so acquired and now held by Noah W. Davis, and further will permit the said First party to use the property in perfecting the proposed corporation as hereinbefore stated.

"4. Noah W. Davis, Trustee for the proposed cor-

poration to be organized, agrees that the said new corporation will pay to the party of the second part ten per cent (10%) of the net earnings of the company until such a time when Two Hundred and Twenty-five Thousand Dollars ($225,000.00) has been paid, and five per cent (5%) thereafter for so long a time as the Mines can be profitably operated.

"5. Said Noah W. Davis, Trustee for and on behalf of the proposed corporation, agrees that no exorbitant or excessive salaries or expenses shall be paid out by the proposed corporation as and when the same are earned.

"6. It is mutually agreed between the parties hereto that the proposed company shall be permitted to set up such reasonable reserves as are necessary to assure a successful management, and that no dividends shall be paid until the amount advanced to purchase the properties has been repaid.

"7. Noah W. Davis, Trustee for and on behalf of the proposed corporation, agrees that the said corporation will purchase and install the necessary equipment to and commence operating the Maybell Mine as soon as possible.

"8. The second party further agrees that it will execute all necessary quitclaim deeds or other assurances necessary to vest title to the Maybell, Copperbell and Mogul Mining Claims in the new corporation, as well as any and all other claims and holdings in San Juan county, Colorado, and certain lots in Silverton, Colorado.

"9. Party of the second part for itself and for and on behalf of its stockholders, further agrees that it will stake no claims in the area of the Copperbell, Maybell or Mogul group of claims, and that it will in no way obstruct or interfere with the development of the said properties.

"10. It is further mutually covenanted and agreed by the parties hereto that if the terms of this agreement are not fulfilled by the said parties of the first part, the said second party shall have the option and right of

terminating the rights of the first party by purchasing the aforesaid Certificate of Sale in San Juan county, Colorado, and all other expenses leading up to the formation of the said new corporation.

"11. It is further understood and agreed as a part of this contract that the ten per cent (10%) and five per cent (5%) agreed upon to be paid in this contract to the second party in the contingencies mentioned herein, shall only be paid out of the net proceeds from the operation of the mines or properties covered by the Certificate of Sale as the same is now recorded in San Juan county, Colorado.

"In witness whereof the parties hereto have hereunto set their hands and seals the 23rd day of December, 1932."

It is clear from the aforesaid amended complaint and the aforesaid contract set forth therein that the consolidated judgment recovered by Curtis and his coplaintiffs as creditors of the Trust was a valid judgment. There is no contention to the contrary. The judgment creditors had a right to levy and did levy on the Trust's property and thus obtained a first lien. No attack is made upon the sheriff's sale. On June 28, 1932, the property was bought in by Curtis on behalf of himself and the other judgment creditors and the sheriff's certificate of purchase was properly issued.

Up to this point there is nothing in the allegations to indicate the slightest fraud. The certificate was regularly vested in Curtis.

Davis's purchase of the certificate from the judgment creditors occurred on November 1, 1932, almost two months before expiration of the six-month period during which the Trust as judgment debtor could have redeemed the property under the statutes of Colorado.

It is not suggested by Michell that the Trust had, or could have procured, the means of redeeming from the sheriff's sale. According to the direct allegations of the complaint, the Trust has ever since April 10, 1933, been

"defunct, inoperative and insolvent." Its property had been sold at a valid public sale for no more than the amount of a valid judgment. Michell, though a stockholder and director of the Trust, did nothing to interest other stockholders or his fellow directors or anybody else in evolving a plan for the financial rescue of the Trust. Instead, on March 7, 1933, he had commenced his own action against the Trust and on April 10 recovered a judgment of more than three times the amount for which the property had been sold to the attaching creditors. On April 10, 1933, also, the property was deeded by the sheriff to the defendant San Juan Mining Company, holder of the sheriff's certificate by Davis's assignment to it on February 28, 1933.

Michell had originally attacked the validity of the sheriff's deed on various statutory and constitutional grounds, but these contentions were withdrawn from the present controversy.

Michell did nothing toward seeking a remedy until December 11, 1935, when he filed his complaint herein. ■ ■ Under the facts alleged, was the trial court right in holding that the amended complaint did not state a cause of action? We think it was.

Not only does it appear that the sheriff's deed was regularly issued, with all the preceding steps properly taken, but the alleged fraudulent contract lacks every real element of fraud. Manifestly it gave the Trust a substantial interest in property which had to all intents and purposes been lost. It preserved a strong hope of future earnings for the Trust if the defendant San Juan Mining Company should prosper in the operation of the property involved. There is thus a possibility, which otherwise would not exist, that every creditor of the Trust, including Michell, would benefit directly. Even the stockholders may now get returns as such, whereas, but for the transactions complained of, their holdings would have been worthless.

Notwithstanding the actual situation just discussed,

Michell, though himself a stockholder and director of the Trust, asks us to cancel the sheriff's deed, thus nullifying the aforesaid arrangement for a percentage of net earnings from the property; and he couples with this request the further request that he as judgment creditor of the Trust be given a first lien under his own subsequent judgment and be permitted to sell the property under an execution to be issued on this judgment. In other words, he seeks to profit individually to the exclusion of his fellow stockholders by substituting himself for those creditors who by greater diligence obtained a first and prior lien which bound the property as security for a judgment in all respects valid and regular. The granting of such requests is not within the scope of any sound principles of equity here or elsewhere.

The district court was right in holding that the facts and circumstances appearing from Michell's amended complaint did not constitute a cause of action, and in dismissing the case.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE YOUNG, and MR. JUSTICE KNOUS concur.